## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| STEPHAN BARONI,                          ) <br> ) <br> Plaintiff,                          ) <br> ) <br> v.                          ) <br> ) <br> PERCEPTRON, INC., JAY W. FREELAND,    ) <br> C. RICHARD NEELY JR., JOHN F.         ) <br> BRYANT, JAMES A. RATIGAN,             ) <br> WILLIAM C. TAYLOR, SUJATHA            ) <br> KUMAR, ATLAS COPCO NORTH              ) <br> AMERICA LLC, and ODYSSEY              ) <br> ACQUISITION CORP.,                    ) <br> ) <br> Defendants.                ) | Case No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on September 28, 2020 (the "Proposed Transaction"), pursuant to which Perceptron, Inc. ("Perceptron" or the "Company") will be acquired by Atlas Copco North America LLC ("Parent"), a Delaware limited liability company, and Odyssey Acquisition Corp. ("Merger Sub," and together with Parent, "Atlas").

2.      On September 27, 2020, Perceptron's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Atlas.  Pursuant to the terms of the Merger Agreement, Perceptron's stockholders will receive $7.00 in cash for each share of Perceptron common stock they own.

3.      On October 21, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Perceptron common stock.

9.      Defendant Perceptron is a Michigan corporation and a party to the Merger Agreement.  Perceptron's common stock is traded on the NASDAQ Global Market under the ticker symbol "PRCP."

10.     Defendant Jay W. Freeland is Chief Executive Officer, President, and Chairman of the Board of the Company.

11.     Defendant C. Richard Neely Jr. is a director of the Company.

12.     Defendant John F. Bryant is a director of the Company.

13.     Defendant James A. Ratigan is a director of the Company.

14.     Defendant William C. Taylor is a director of the Company.

15.     Defendant Sujatha Kumar is a director of the Company.

16.     The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17.     Defendant Parent is a Delaware limited liability company and a party to the Merger Agreement.

18.     Defendant Merger Sub is a Michigan corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

19.     Perceptron develops, produces, and sells a comprehensive range of automated industrial metrology products and solutions to manufacturing organizations for dimensional gauging, dimensional inspection, and 3D scanning.

20.     The Company's products include 3D machine vision solutions, robot guidance, coordinate measuring machines, laser scanning, and advanced analysis software.

21.     Global automotive, aerospace, and other manufacturing companies rely on the Company's metrology solutions to assist in managing their complex manufacturing processes to improve quality, shorten product launch times, and reduce costs.

22.     On September 27, 2020, Perceptron's Board caused the Company to enter into the Merger Agreement with Atlas.

23.     Pursuant to the terms of the Merger Agreement, Perceptron's stockholders will receive $7.00 in cash for each share of Perceptron common stock they own.

24.     According to the press release announcing the Proposed Transaction:

Perceptron, Inc. (NASDAQ: PRCP), a leading global provider of 3D automated metrology solutions and coordinate measuring machines, today announced that it has entered into a definitive agreement (or the "Agreement") to be acquired by Atlas Copco, a world-leading provider of sustainable productivity solutions headquartered in Stockholm, Sweden, for $7.00 per share. The all-cash transaction values Perceptron at an equity valuation of approximately $68.9 million.

Under the terms of the agreement, Perceptron shareholders will receive $7.00 per share in cash for each share of common stock held. This consideration represents a premium of approximately 66% to the 30-day average closing share price of $4.22 as of September 25, 2020. The Board of Directors has unanimously approved the agreement and recommends that all shareholders vote in favor of the transaction. Harbert Discovery Fund, L.P., Perceptron's largest shareholder with approximately 10.5% of the total shares outstanding, has signed a Voting and Support Agreement in favor of the proposed transaction. The transaction is expected to close during the calendar fourth quarter 2020, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals. . . .

Perceptron engaged XMS Capital Partners, LLC as its financial advisor, Dykema Gossett PLLC as its legal advisor and Vallum Advisors LLC as its financial communications advisor on this transaction.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

25.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

26.     As set forth below, the Proxy Statement omits material information.

27.     First, the Proxy Statement omits material information regarding the financial analyses performed by the Company's financial advisor, XMS Capital Partners, LLC ("XMS").

28.     With respect to XMS's Selected Comparable Company Analysis, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by XMS in the analysis; and (ii) XMS's basis for applying an illustrative range of EV/CY 2021E EBITDA multiples of 8.0x to 10.0x.

29.     With respect to XMS's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the transactions observed by XMS in the analysis; and (ii) XMS's basis for applying an illustrative range of forward EBITDA multiples of 9.0x to 11.0x.

30.     With respect to XMS's Offer Price Premia Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by XMS in the analysis; and (ii) the premiums paid in the transactions.

31.     With respect to XMS's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the stand-alone unlevered, after-tax free cash flows that the Company was forecasted to generate during the fiscal years ending June 30, 2021 through June 30, 2030 and all underlying line items; (ii) the terminal values for the Company; (iii) XMS's basis for selecting a range of EBITDA exit multiples of 8.0x to 10.0x; and (iv) the individual inputs and assumptions underlying the range of discount rates from 14.0% to 16.0%.

32.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

33.     Second, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions.

34.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

35.     Third, the Proxy Statement fails to disclose whether XMS provided any services to Atlas or its affiliates in the two years preceding its opinion, and if so, the timing and nature of such services and the amount of compensation received by XMS for providing the services.

36.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

37.     Fourth, the Proxy Statement provides: "On May 12, 2020, a representative of an investment banking firm who had a prior business relationship with Mr. Freeland, called Mr. Freeland to inform him that Parent may be interested in a transaction with the Company." However, the Proxy Statement fails to disclose the nature of the "prior business relationship," when it was disclosed to the Board, and whether the Board considered whether there was a potential conflict of interest.

38.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Perceptron**

40.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41.    The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Perceptron is liable as the issuer of these statements.

42.    The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

43.    The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

44.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

45.    The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

46.    By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

47.    Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Atlas**

48.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49.     The Individual Defendants and Atlas acted as controlling persons of Perceptron within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or Board members of Perceptron and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50.     Each of the Individual Defendants and Atlas was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

52.     Atlas also had supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

53.     By virtue of the foregoing, the Individual Defendants and Atlas violated Section 20(a) of the 1934 Act.

54.     As set forth above, the Individual Defendants and Atlas had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 27, 2020                    **RIGRODSKY & LONG, P.A.**

                              By:  */s/ Gina M. Serra*
                                  Seth D. Rigrodsky (#3147)
                                  Brian D. Long (#4347)
                                  Gina M. Serra (#5387)
                                  300 Delaware Avenue, Suite 210
                                  Wilmington, DE 19801
                                  Telephone: (302) 295-5310
                                  Facsimile: (302) 654-7530
                                  Email: sdr@rl-legal.com
                                  Email: bdl@rl-legal.com
                                  Email: gms@rl-legal.com

                                  *Attorneys for Plaintiff*